IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KATHY MINNICH,** | : | **Civil No. 1:20-CV-00378** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **NORTHEASTERN SCHOOL** | : | |
| **DISTRICT, STACEY SIDLE,** | : | |
| **Individual, BRIAN GELLER,** | : | |
| **Individual,** | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court is a motion to dismiss filed by the defendants in this matter, Northeastern School District, Stacey Sidle, and Brian Geller (collectively "Defendants"). (Doc. 10.) For the reasons set forth below, the motion will be granted in part and denied in part.

## I.   BACKGROUND

The following facts are gleaned from the Plaintiff's Amended Complaint and are taken as true for the purpose of resolving Defendants' motion to dismiss. Plaintiff commenced her employment with the Northeastern School District (the "NESD"), located in York County, Pennsylvania, on or about August 1999. (Doc. 9, at ¶¶ 3, 8). Plaintiff served as a School Social Worker from approximately August 1999 to January 2020, and currently holds the position of Long-Term Substitute School

Psychologist. (*Id.*, at ¶¶8-9). Stacey Sidle ("Dr. Sidle"), who became the Superintendent of the School District in December 2016, serves as Plaintiff's supervisor and Brian Geller ("Mr. Gellar") holds the position of Director of Operations of the School District. (*Id.*, at ¶¶ 5-6).

On February 23, 2016, Plaintiff requested workplace accommodations under the Family Medical Leave Act (FMLA) in order to attend therapy sessions. (*Id.*, at ¶ 10). Plaintiff alleges that a traumatic personal incident involving her estranged spouse (the "Incident"), who served as the NESD District Superintendent at the time, caused her to seek treatment for anxiety and panic attacks. (*Id.*, at ¶¶ 10, 12). Plaintiff subsequently requested FMLA leave to take her children to therapy appointments in connection with their Post-Traumatic Stress Disorder that also stemmed from the Incident. (*Id.*, at ¶ 13). The NESD School Board denied both FMLA leave requests on March 7, 2016. (*Id.*, at ¶¶10, 13).

On April 4, 2016 and April 5, 2016, Plaintiff participated in an investigative hearing held by the Pennsylvania Department of Education ("PDE"). (*Id.*, at ¶ 15). The PDE investigation concerned the Plaintiff's estranged husband and the Incident. (*Id.*, at ¶¶ 15-16). On April 8, 2016, Plaintiff received a Formal Letter of Reprimand (the "Letter") that allegedly contained inaccurate information. (*Id.*, at ¶ 16). Plaintiff alleges that the Letter, which was her first disciplinary action in her seventeen years

of working for the NESD, was in retaliation for her involvement in the PDE hearing and her FMLA leave requests. (*Id.*)

Plaintiff subsequently requested that the Letter be removed from her personnel file in lieu of a grievance. (*Id.*, at ¶ 18). A meeting then took place between Plaintiff, Dr. Sidle, and the Pennsylvania State Education Association's Uniserve Representative, Matthew Fargen ("Mr. Fargen"), during which time Dr. Sidle allegedly admitted to receiving "pressure from above" to hold Plaintiff accountable for her actions at the PDE hearing. (*Id.*, at ¶ 19). On June 22, 2016, Plaintiff was informed that her office was being relocated in order to accommodate a floater nurse. (*Id.*, at ¶ 20). Plaintiff claims that the floater nurse never used the office, however, and that her estranged husband had previously threatened to move the Plaintiff's office in an effort to undermine her professional status. (*Id.*)

Further, in August of 2016, Plaintiff alleges that a school secretary caught Dr. Sidle and others in her office searching through her personal belongings and files. (*Id.*, at ¶ 21). Plaintiff filed a dual charge with the Equal Opportunity Employment Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on December 23, 2016. (*Id.*, at ¶ 27). During the investigation into the charge, Plaintiff provided a written statement to the EEOC in which she indicated that her estranged husband, while still serving as the NESD Superintendent, ultimately prompted Dr. Sidle's purported retaliation. (*Id.*, at ¶ 30). The EEOC

issued a right to sue letter dated April 18, 2017, to which Plaintiff took no action, and the PHRC eventually issued a right to sue letter dated July 9, 2019. (*Id.*, at ¶¶ 36, 38).

Plaintiff also met with Dr. Sidle on March 7, 2018 regarding the hostile work environment that she allegedly endured. (*Id.*, at ¶ 23). During this meeting, Plaintiff also raised issues pertaining to her health and family. (*Id.*) The NESD then held a meeting on October 10, 2018 where Plaintiff again raised her continuing concerns of bullying and harassment. (*Id.*, at ¶ 24). After this meeting, the NESD hired an attorney to investigate the issues raised by Plaintiff. (*Id.*, at ¶ 25).

On or about November 7, 2018, Plaintiff discovered that Mr. Gellar had shared her private cell phone records, office phone records, and personal calendars with third parties without her consent on or about April 4, 2016. (*Id.*, at ¶¶ 26, 68). Although the information had been requested under the Pennsylvania Right to Know Law, Plaintiff claims that Mr. Gellar admitted to wrongdoing regarding the release of her private information on or about December 7, 2019. (*Id.*, at ¶ 26).

Additionally, in June 2019, Plaintiff applied for a position as permanent School Psychologist with the NESD. (*Id.*, at ¶¶ 9, 37). According to Plaintiff, the position was considered a promotion. (*Id.*, at ¶ 37). However, despite her twenty-year tenure with the NESD, Plaintiff neither received an interview for the position nor any form of communication that the job had been filled. (*Id.*, at ¶¶ 39-40). The

Plaintiff's Union subsequently filed a successful grievance against the NESD on June 16, 2019. (*Id.*, at ¶¶ 9, 40). As a result of the grievance, Plaintiff was awarded her present position of Long-Term Substitute School Psychologist. (*Id.*, at ¶ 9).

## II.   <u>PROCEDURAL HISTORY</u>

Plaintiff initiated the instant action on March 4, 2020 by way of filing the original complaint against Defendants. (Doc. 1). Defendants filed a motion to dismiss on May 8, 2020 and a supporting brief on May 22, 2020. (Docs. 5 and 8). Plaintiff then filed an Amended Complaint against Defendants on May 31, 2020, which stands as the operative pleading in this matter. (Doc. 9).

The Amended Complaint alleges violations of Plaintiff's Fourteenth Amendment Due Process Rights and Fourth Amendment Right to be free from unreasonable searches (Counts 1 and 2). (*Id.*, at ¶¶ 71-94). The Amended Complaint also asserts hostile work environment and retaliation claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Counts 3 and 4), and the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. §§ 951, *et seq.* (Counts 5 and 6). (*Id.*, at ¶¶ 95-127). Defendants filed a motion to dismiss the Amended Complaint on June 15, 2020, followed by a supporting brief on June 26, 2020. (Docs. 10, 13). Plaintiff then filed a brief in opposition on June 29, 2020. (Doc. 14). Defendants filed a reply brief on July 13, 2020, (Doc. 15), bringing this case to its present procedural posture.

### III.  **LEGAL STANDARDS**

#### 1.  **Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). In reviewing a 12(b)(6) motion, the court must "accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them." *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018) (citation omitted). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2012). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id. at 365*. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then

'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### 2.  Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
> *Id.*

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United

States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## IV.  DISCUSSION

### 1.  Claims Brought Under 42 U.S.C. § 1983

#### a.  Fourteenth Amendment Due Process Claim (Count 1)

In Count 1 of the Amended Complaint, Plaintiff brings a due process claim against the NESD and Dr. Sidle. As noted by Defendants, Plaintiff appears to base this claim on the following three grounds: (1) failing to notify Plaintiff about the requests for, and the disclosure of, her personal information under the Pennsylvania Right to Know Law ("RTKL"), 65 Pa. Const. Stat. §§ 67.101 *et seq.*,; (2) depriving Plaintiff of her liberty interest in her reputation, which allegedly limited her ability to be interviewed for jobs with upward mobility; and (3) violating Plaintiff's substantive due process rights. Defendants argue that each of these arguments fail to state a viable Fourteenth Amendment claim against the NESD and Dr. Sidle. For the reasons that follow, the Court agrees with Defendants.

#### i.  *Pennsylvania's Right to Know Law*

In the Amended Complaint, Plaintiff alleges that the NESD and Dr. Sidle failed to notify her about "critical requests for information" that were made under the Pennsylvania RTKL. (Doc. 9, at ¶ 75). According to Plaintiff, the requested records—which included her private cellphone records, office phone records, and

personal calendars—were exempt from access by a requester under Section 708(b) of the RTKL. (*Id.*, at ¶¶ 26, 68, 75). By failing to notify Plaintiff about these requests, or otherwise inform her that the exempted records had been provided to the requestor, Plaintiff claims that the NESD and Dr. Sidle risked her personal security and placed her and her family under the threat of physical harm. (*Id.*, at ¶¶ 75-76). Plaintiff additionally claims that Defendants "knowingly and deliberately violated the [RTKL] in order to cause harm to the Plaintiff and in violation of her right to due process." (*Id.*, at ¶ 67).

Although the United States Constitution does not explicitly reference a "right to privacy," the United States Supreme Court has recognized that two distinct privacy interests exist under the Fourteenth Amendment: (1) "the individual interest in avoiding the disclosure of personal matters"; and (2) "the interest in independence in making certain kinds of important decisions." *Doe v. Luzerne Cty.*, 660 F.3d 169, 175 (3d Cir. 2011) (citing *C.N. v. Ridgewood Bd. Of Educ.*, 430 F.3d 159, 178 (3d Cir. 2005); *Malleus v. George*, 641 F.3d 560, 564 (3d Cir. 2011), *as amended* (June 6, 2011)). The first privacy right, which Plaintiff appears to invoke here, generally extends to "highly personal matters" that represent "the most intimate aspects of human affairs" as well as information that involves "deeply rooted notions of fundamental personal interests derived from the Constitution." *Nunez v. Pachman*, 578 F.3d 228, 232 (3d Cir. 2009) (internal citations and quotations omitted). For

example, the Third Circuit has found that the following types of information are entitled to constitutional privacy protection: "a private employee's medical information that was sought by the government; medical, financial and behavioral information relevant to a police investigator; a public employee's prescription record; a minor student's pregnancy status; sexual orientation; and an inmate's HIV-positive status. *Luzerne Cty.*, 660 F.3d at 176 (citing *Malleus v. George*, 641 F.3d 560, 564 (3d Cir. 2011) *as amended* (June 6, 2011) (collecting cases)).

Even when taken as true, the crux of the Plaintiff's argument is that the NESD and Dr. Sidle violated the Pennsylvania RTKL by releasing exempted, "personal identifiable information" without providing notice to her. However, as articulated by the Third Circuit, "Section 1983 does not provide a cause of action for violations of state statutes." *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) (citing *Brown v. Grabowski,* 922 F.2d 1097, 1113 (3d Cir. 1990); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978)); *see also Breslin v. Portillo*, No. CV 12-0360, 2018 WL 4002858, at *4 (M.D. Pa. Aug. 22, 2018) (dismissing claim brought under Section 1983 "[b]ecause alleged violations of Pennsylvania's Right-To-Know law do not give rise to a constitutional claim. . . ."). Further, insofar as Plaintiff claims that the purported state law violations triggered her substantive due

process right to privacy,[1] she fails to allege in a non-conclusory fashion how the information at issue was either of constitutional dimension[2] or threatened one of her fundamental rights[3] upon being disclosed pursuant to the RTKL. Accordingly, as the Amended Complaint currently stands, the Court cannot reasonably infer that the alleged dissemination of Plaintiff's phone records and personal calendars violated the due process clause of the Fourteenth Amendment.

### ii.  *Liberty Interest in Reputation*

Count 1 of the Amended Complaint further alleges that the NESD and Dr. Sidle undermined the Plaintiff's professional reputation within the school district and community by permitting a continuous effort to harass and bully her. (Doc. 9, at

---

[1] The Plaintiff's brief in opposition also claims that the Defendants' failure to notify her about the RTKL requests violated her right to privacy, "and one in which she was not afforded the right to confront." (Doc.14, at 15). Generally, "procedural due process requires notice and an opportunity to be heard before any governmental deprivation of a property interest." *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 570 (3d Cir. 1985) (citing *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)). Such protected property interests are not created by the United States Constitution, however, but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Here, it is apparent that the Plaintiff's argument conflates the privacy right in avoiding the disclosure of personal matters (which implicates substantive due process concerns) with whether Pennsylvania law creates a protected property interest in the confidentiality of the information at issue. Therefore, insofar as Plaintiff attempts to cast her privacy claim as a deprivation of procedural due process, the Court finds her position to be without merit.

[2] The Court notes that the alleged nature of the cell phone records at issue is also not entirely clear.

[3] According to the Third Circuit, "[w]hether a property interest is protected for purposes of *substantive due process* is a question that is not answered by reference to state law [but rather] . . . must be [considered a] 'fundamental' [right] under the United States Constitution." *Hill v. Borough of Kutztown*, 455 F.3d 225, 235 n.12 (3d Cir. 2006) (emphasis in original) (citing *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000)).

¶ 77). Plaintiff contends that Defendants achieved this end by failing to protect her interests, failing to notify her about the RTKL requests, and subjecting her to unlawful discipline. (*Id.*, at ¶¶ 78-80). Plaintiff further asserts that this conduct resulted in her being denied the opportunity to interview for positions with upward mobility. (*Id.*, at ¶ 9; Doc. 14, at 15-16). Defendants argue that the Amended Complaint fails to adequately allege that Defendants deprived her of a liberty interest in her reputation without due process, or otherwise infringed on her right to pursue a career as a school psychologist. (Doc. 13, at 4-5).

As noted by the Third Circuit, "reputation *alone* is not an interest protected by the Due Process Clause." *Clark v. Twp. of Falls,* 890 F.2d 611, 619 (3d Cir. 1993) (citing *Paul v. Davis,* 424 U.S. 693, 701–12 (1976)) (emphasis added). Instead, "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (emphasis in original) (citing *Davis*, 424 U.S. at 701). This is known as the "stigma-plus" test, where, in the public employment context, an employer deprives an employee of a protected liberty interest by "creat[ing] and disseminat[ing] a false and defamatory impression about the employee in connection with his termination." *Id.* Specifically, "[t]he creation and dissemination of a false and defamatory

impression is the 'stigma,' and the termination [or constructive discharge] is the 'plus.'" *Id.* at 236-38. !

At issue is thus whether the Amended Complaint has sufficiently alleged a stigma to the Plaintiff's reputation in addition to the required "plus." "To satisfy the 'stigma' prong of the test, the employee must show: (1) publication of (2) a substantially and materially false statement that (3) infringed upon the 'reputation, honor, or integrity' of the employee." *Brown v. Montgomery Cty.*, 470 F. App'x 87, 91 (3d Cir. 2012) (quoting *Ersek v. Springfield*, 102 F.3d 79, 83-84 (3d Cir. 1996)). Additionally, the "plus" prong is generally met by being terminated from employment, constructively discharged, or deprived of a constitutionally protected property interest. *See Graham v. City of Philadelphia*, 402 F.3d 139, 142 n.2 (3d Cir. 2005); *Dee v. Borough of Dunmore*, 549 F.3d 225, 234 (3d Cir. 2008). "Although deprivation of the 'liberty to pursue a calling or occupation' or to 'earn a living' have been deemed sufficient to satisfy the plus prong, a generalized 'possible loss of future employment opportunities' and 'financial harm' are insufficient to support a reputation-based due process claim." *Kahan v. Slippery Rock Univ. of Pennsylvania*, 50 F. Supp. 3d 667, 711 (W.D. Pa. 2014), *aff'd*, 664 F. App'x 170 (3d Cir. 2016) (citations omitted). !!

Here, the Amended Complaint alleges that Plaintiff received a Formal Letter of Reprimand (the "Letter") in an effort to retaliate against her for cooperating with

the PDE and its investigation into her estranged husband. (Doc. 9, at ¶¶ 15-16). The Letter allegedly listed specific days where Plaintiff had either not badged in correctly or inaccurately been marked for attendance, which differed from other employees who had not been subjected to the same scrutiny. (*Id.*, at ¶ 17). Notably, "Third Circuit precedent establishes that the presence of stigmatizing information in a personnel file, alone, is not sufficient publication to establish a deprivation of liberty interest in reputation under the Fourteenth Amendment." *Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 603–04 (M.D. Pa. 2013), *aff'd*, 548 F. App'x 813 (3d Cir. 2013) (citing *Copeland v. Phila. Police Dep't*, 840 F.2d 1139 (3d Cir. 1988) (*abrogated on other grounds by Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207 (3d Cir. 1991)). *But see Perri v. Aytch,* 724 F.2d 362, 367 (3d Cir. 1983) ("Perri alleges that the false accusation made in connection with her termination impugns her good character and reputation, is part of her personnel file, and can reasonably be expected to be communicated to prospective employers and prevent her from obtaining alternative employment. If true, these conditions would require the employer to provide procedural safeguards."). Accordingly, even when taken as true, the Court cannot reasonably infer that the mere issuance of the Letter containing inaccurate information satisfies the stigma prong.

Assuming *arguendo* that the stigma prong was met, however, the Court is also not convinced that Plaintiff has adequately pleaded the requisite "plus" prong.

Significantly, Plaintiff does not allege that she was fired from her position or constructively discharged—indeed, she currently holds the position of Long-Term Substitute Psychologist. Rather, Plaintiff asserts that she "was not properly provided with an opportunity to interview for position(s) which she was qualified for and for which an interview was appropriate[.]" (Doc. 9, at 18, ¶ 79). Citing to *McKnight v. Southeastern Penn. Trans. Auth.*, 583 F.2d 1229 (3d Cir. 1978) in support, Plaintiff further argues that failing to be interviewed for positions with upward mobility implicates a protected property right. (Doc. 14, at 16).

In *McKnight*, the defendant employer discharged plaintiff for allegedly being intoxicated while at work. 583 F.2d at 1231. Plaintiff claimed that these accusations, which defendants communicated to others as the basis of plaintiff's dismissal, were sufficiently stigmatizing to result in the loss of his reputation and later employment opportunities. *Id.* at 1235. Given these claims, the *McKnight* court held that plaintiff had "set forth adequate allegations of harm to his reputation constituting a deprivation of 'liberty.'" *Id.* at 1238. The court remanded the issue, however, of whether plaintiff had sufficiently alleged a deprivation of a protected property interest. *Id.* at 1242.

Therefore, contrary to the Plaintiff's contention, *McKnight* does not stand for the proposition that a protected property interest exists in jobs with upward career advancement. Indeed, "[i]t is the liberty to pursue a particular calling or occupation

15

and not the right to a specific job that is protected by the Fourteenth Amendment." *Piecknick v. Com. of Pa.*, 36 F.3d 1250, 1262 (3d Cir. 1994). "As far as the liberty interest in the right to practice one's chosen profession is concerned, '[o]ne simply cannot have been denied his liberty to pursue a particular occupation when he admittedly continues to hold a job . . . in that very occupation.'" *DOE v. Rogers*, 139 F. Supp. 3d 120, 164 (D.D.C. 2015) (quoting *Abcarian v. McDonald,* 617 F.3d 931, 942 (7th Cir. 2010)); *see also Gittens-Bridges v. City of New York*, No. 19 CIV. 272 (ER), 2020 WL 3100213, at \*17 (S.D.N.Y. June 11, 2020) (holding that the plaintiff's "loss of promotional opportunities while still employed by DOC cannot satisfy the 'plus' requirement.") (citing *Schlesinger v. New York City Transit Auth.*, No. 00-CV-4759 (SAS), 2001 WL 62868, at \*7 (S.D.N.Y. Jan. 24, 2001)); *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1303 (11th Cir. 2001) (holding that the denial of plaintiff's promotion, which stemmed from the placement of a stigmatizing memorandum in his personnel file, failed to satisfy the "plus" prong). Even though Plaintiff alleges that Defendants' disciplinary actions resulted in her being denied an interview for a permanent school psychologist position, the Court cannot reasonably deduce that this foreclosed Plaintiff's future employment opportunities as contemplated under the Fourteenth Amendment.

Thus, as Plaintiff's allegations fail to meet both prongs of the stigma plus test, the Amended Complaint fails to state a claim for deprivation of a liberty interest in the Plaintiff's reputation.

### iii. Substantive Due Process

Finally, Defendants move to dismiss Count 1 of the Amended Complaint to the extent that it raises a substantive due process claim. "To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Tucker Indus. Liquid Coatings, Inc. v. Borough of E. Berlin*, 656 F. App'x 1, 6 (3d Cir. 2016) (citing *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)). The Third Circuit Court of Appeals has clarified that "substantive due process rights are those rights which are 'fundamental' under the Constitution." *Nicholas v. Pennsylvania State University,* 227 F.3d 133, 139–41 (3d Cir. 2000).

In her brief in opposition, Plaintiff cites to the Incident involving her estranged husband (and former NESD Superintendent) that resulted in his criminal prosecution. (Doc. 14, at 16-17). Plaintiff then asserts that her estranged husband's "subsequent attempts to invade her private life, stalk and harass [her], [and] pressure people to hold her accountable," all while she suffered from post-traumatic stress disorder and anxiety, contributed to the creation of the hostile work environment that

she experienced. (*Id.*) As mentioned *supra*, however, Plaintiff has failed to sufficiently allege the deprivation of a fundamental right to which substantive due process protections would apply. Accordingly, even when the Plaintiff's allegations are taken as true, the Amended Complaint fails to state a Fourteenth Amendment substantive due process claim against Dr. Sidle and the NESD.

As such, the Defendants' motion to dismiss Count 1 of the Amended Complaint will be granted pursuant to FED. R. CIV. P. 12(b)(6).

### b. Fourth Amendment Claim (Count 2)

In Count 2 of the Amended Complaint, Plaintiff alleges that Defendants violated her Fourth Amendment right to be free from unreasonable searches when they searched her personal belongings and files in her office without her consent. (Doc. 9, at ¶¶ 21, 87). Plaintiff also alleges that Defendants ran afoul of the Fourth Amendment when they permitted the release of her private information without justification. (*Id.*, at ¶ 87). Defendants argue that Plaintiff's claim fails as a matter of law, as she does not have any expectation of privacy in her school office and files. (Doc. 13, at 27). Insofar as Plaintiff complains about the release of her personal information, Defendants assert that Fourth Amendment liability does not attach because they lawfully provided the records at issue in response to RTKL requests. (*Id.*)

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. U.S. CONST. amend. IV. The United States Supreme Court has also held that the Fourth Amendment extends to searches and seizures by "government employers or supervisors of the private property of their employees" and "the conduct of school officials." *O'Connor v. Ortega*, 480 U.S. 709, 714-15 (1987). To invoke the protections of the Fourth Amendment, an employee must show that the official's aggrieved of conduct infringed "an expectation of privacy that society is prepared to consider reasonable.'" *See Id.* at 715 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Next, when a reasonable expectation of privacy exists in the place searched, an employee must demonstrate that "both the inception and scope" of the search was unreasonable. *See Id.* at 725-26; *see also Gwynn v. City of Philadelphia*, 719 F.3d 295, 303 (3d Cir. 2013) (noting that a public employer's "non-criminal investigative search will be reasonable if, at its inception, there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct and the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the nature of the misconduct.") (internal quotations and citations omitted).

As relevant here, "employees may be entitled to a reasonable expectation of privacy in the contents of documents stored in the workplace, both in the private and

public sectors." *Walker v. Coffey*, 905 F.3d 138, 148 (3d Cir. 2018). "The operational realities of the workplace, however, may make *some* employees' expectations of privacy unreasonable when an intrusion is by a supervisor rather than a law enforcement official." *O'Connor*, 480 U.S. at 717 (emphasis in original); *see also Walker*, 905 F.3d at 148 ("[A]lthough employees may have certain privacy interests in their work-related documents and communications vis-à-vis outsiders, their privacy interests vis-à-vis their employer are far more circumscribed."). Indeed, the reasonableness of an expectation of privacy "must be assessed in the context of the employment relation." *Id.*

Plaintiff alleges that a school secretary caught Dr. Sidle and others in her "personal office searching through Plaintiff's personal belongings and personal files." (Doc. 9, at ¶ 21). Plaintiff has failed to sufficiently allege, however, that she had a reasonable expectation of privacy in her office and its contents based on the "operational realities of the workplace." *Cf. O'Connor*, 480 U.S. at 717 (holding that employee had a reasonable expectation of privacy in his desk and file cabinets when he did not share the space with any other employees); *Gillard v. Schmidt*, 579 F.2d 825, 828 (3d Cir. 1978) (noting that by "[w]orking in an office secured by a locked door at a desk containing psychological profiles and other confidential student records, [school guidance counselor] had a reasonable expectation that papers in his desk would remain safe from prying eyes."); *United States v. Ziegler*, 474 F.3d 1184,

1189 (9th Cir. 2007) (finding that employee had reasonable expectation of privacy in his office, which he kept locked and did not share with other co-workers, and the work computer stored therein). Further, beyond asserting that the items searched were "personal" in nature, Plaintiff does not claim that she exhibited any efforts to maintain the privacy of her files or personal calendars at issue. Moreover, to the extent that Plaintiff alleges Defendant Gellar turned over her "private cell phone records" without her consent or justification, the Court finds these allegations to ultimately be conclusory for the purposes of stating a claim under the Fourth Amendment.[4]

For these reasons, the Court will grant the Defendants' motion to dismiss Count 2 of the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6).

### c. **Qualified Immunity**

Defendants alternatively argue that, to the extent Dr. Sidle and Mr. Gellar are being sued in their individual capacities, they are entitled to qualified immunity in Counts 1 and 2 of the Amended Complaint. (Doc. 13, at 28-32). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v.*

---

[4] At this juncture, the Court declines to address whether Defendants had reasonable grounds for the search of the Plaintiff's office, calendar and cell phone records at its inception so as to fall within the workplace search exception to the warrant requirement.

*Callahan*, 555 U.S. 223, 231 (2009). The Third Circuit Court of Appeals has also noted that "the importance of resolving qualified immunity questions early 'is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." *Phillips v. County of Allegheny*, 515 F.3d 224, 242 n.7 (3d Cir. 2008) (citing *Curley v. Klem*, 298 F.3d 271, 277–78 (3d Cir. 2002)). As the Court has dismissed Counts 1 and 2 of the Amended Complaint for failure to state a claim, however, the Court declines to address whether Dr. Sidle and Mr. Gellar would also be afforded qualified immunity had these claims been adequately alleged. Therefore, the Court will deny the Defendants' motion to dismiss on the grounds of qualified immunity without prejudice to Defendants re-asserting this argument at a later stage.

### d. **Municipal Liability**

Defendants additionally argue that the Amended Complaint fails to establish a viable *Monell* claim against the NESD under Section 1983. (Doc. 13, at 46). "Municipal employers, such as school districts . . . cannot be held vicariously liable for the constitutional violations committed by their employees." *Moeck v. Pleasant Valley Sch. Dist.*, 983 F. Supp. 2d 516, 524 (M.D. Pa. 2013) (citing *Monell v. NYC Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)); *see also Karchnak v. Swatara Twp.*, 540 F. Supp. 2d 540, 545 (M.D. Pa. 2008) ("*Respondeat superior* is not a viable theory of municipal liability under § 1983. . . ."). Rather, "[m]unicipal liability only

attaches when a plaintiff demonstrates that an official policy or custom[5] caused the asserted constitutional deprivation." *Moeck v. Pleasant Valley School Dist.,* 983 F.Supp.2d 516, 524 (M.D. Pa. 2013) (citing *Watson v. Abington Twp.,* 478 F.3d 144, 155 (3d Cir. 2007)). Specifically, "[l]iability is imposed 'when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees.'" *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)); *see also Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996)* (Municipal liability applies "to only those constitutional torts actually caused by the municipality."); *C.N. v. Ridgewood Bd. of Educ.,* 430 F.3d 159, 173 (3d Cir. 2005) (noting that "a plaintiff must allege that a municipal custom or policy was the proximate cause of the constitutional injury sustained.").

A municipal entity may also be held liable under Section 1983 based on a failure to train theory of liability. "Where . . . the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons

---

[5] The Third Circuit has explained that a policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy, or edict." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996). A custom, however, "is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Bryan County*, 520 U.S. at 404).

with whom those employees will come into contact." *Carter v. City of Phila.*, 181

F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388

(1989)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof

that a municipal actor disregarded a known or obvious consequence of his action.'"

*Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Bd. of Cty.*

*Comm'rs of Bryan Cty., Okl. v. Brown,* 520 U.S. 397, 410 (1997)). Generally, "a

pattern of constitutional violations by untrained employees" is required to establish

"deliberate indifference for the purposes of failure to train," as this "puts municipal

decisionmakers on notice that a new program is necessary." *Id.* (quoting *Connick v.*

*Thompson*, 563 U.S. 51, 62 (2011); *Bryan Cty.*, 520 U.S. at 407-08). Single incident

liability may arise, however, if "the need for training 'can be said to be 'so obvious,'

that failure to do so could properly be characterized as 'deliberate indifference' to

constitutional rights.'" *Id.* (quoting *City of Canton*, 489 U.S. at 390 n.10).

In the Amended Complaint, Plaintiff appears to invoke both a policy and

custom theory and a failure to train theory of municipal liability against the NESD.

Defendants argue that Plaintiff has failed to identify "with anything more than bare

allegations and legal conclusions the existence of  policy, custom, or practice of the

District that violated her Constitutional rights." (Doc. 13, at 47). They further assert

that Plaintiff has not sufficiently alleged the existence of a causal link between the

purported policies, or failure to train, and the injury that she suffered. (*Id.*, at 49, 51-52). After careful review, the Court agrees with Defendants.

In the Amended complaint, Plaintiff alleges that the NESD: (1) failed to adopt policies or customs that protected an employee's right to privacy and right to be free from harassment and retaliation, thereby acquiescing in the invasion of her privacy, use of "illegitimate right to know requests," unlawful bullying, harassment, and retaliation; (2) failed to train its employees regarding employee privacy rights, requests under Pennsylvania's RTKL, and the right to be free from workplace harassment and retaliation; (3) failed to properly train its employees with respect to following its anti-harassment policies, which allegedly permitted the individual Defendants to "discipline, punish, abuse and harass" Plaintiff when she made complaints about the invasions of her privacy, harassment, failure to promote, failure to provide medical leave, and hostile work environment; and (4) tolerated its employees' failure to adhere its anti-harassment policies, which thereby led to Plaintiff's harassment and hostile working conditions. (Doc. 9, at ¶¶ 42-43, 55-57, 64-65, 87). Nonetheless, these allegations do not allow the Court to reasonably infer that these policies of action and inaction were the "driving force" behind Plaintiff's purported Constitutional injuries,[6] as opposed to isolated incidents of misconduct

---

[6] A municipality cannot be held liable where the plaintiff has experienced no violation of her constitutional rights. *See Hammon v. Kennett Twp.*, 746 F. App'x 146, 150 (3d Cir. 2018) (citing *Brown v. Commonwealth of Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d

committed by NESD employees. *See Monell,* 436 U.S. at 694. Further, when construed in the light most favorable to Plaintiff, the Amended Complaint is devoid of any allegations that the NESD's purported failures in training amounted to deliberate indifference to Plaintiff's constitutional rights. Therefore, insofar as Plaintiff asserts a *Monell* claim against the NESD under Section 1983, the Court will grant the Defendants' motion to dismiss.

### 2.  Claims Brought Under Section 504 of the Rehabilitation Act (Counts 3 and 4)

#### a.  Administrative Exhaustion

In Counts 3 and 4 of the Amended Complaint, Plaintiff asserts claims against the NESD for hostile work environment and retaliation on the basis of her disabilities (anxiety and depression) in violation of Section 504 of the RHA. Defendants argue that Plaintiff's Section 504 claims should be dismissed for failing to exhaust her administrative remedies prior to filing this suit. (Doc. 13, at 32-37). Defendants further claim that by bringing her claims under Section 504 instead of under the American with Disabilities Act ("ADA"), Plaintiff is "clearly attempting to subvert the administrative process required by the ADA." (*Id.*, at 32). In response, Plaintiff contends that the Rehabilitation Act does not impose an exhaustion requirement for claims brought under Section 504. (Doc. 14, at 20).

---

473, 482 (3d Cir. 2003)). As discussed *supra*, Plaintiff's constitutional claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6). Therefore, the Plaintiff's purported *Monell* claims also fail for this reason.

Section 504 of the Rehabilitation Act prohibits federal agencies and private entities that receive federal funding from discriminating against individuals on the basis of their disability. *Freed v. Consolidated Rail Corporation,* 201 F.3d 188, 191 (3d Cir. 2000). The statute provides, in relevant part:

> No otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

> 29 U.S.C. § 794(a).

Alleged violations of Section 504 are interpreted using the same standards applied to claims brought under the ADA, 42 U.S.C. §§ 12201-12204 and 12210, with Section 504 claims requiring the additional component of federal financial assistance. *See* 29 U.S.C. § 794(d); *McDonald v. Pennsylvania,* 62 F.3d 92, 95 (3d Cir. 1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same.") (citation omitted).

Although the same standards generally govern claims under Section 504 and the ADA, different administrative exhaustion requirements apply. *Kortyna v. Lafayette Coll.*, 47 F. Supp. 3d 225, 238–39 (E.D. Pa. 2014). As relevant here, the Third Circuit has held that nonfederal employee-plaintiffs suing a private recipient of federal funds solely under Section 504 "may proceed directly to court without pursuing administrative remedies." *Freed v. Consolidated Rail Corp.*, 201 F.3d 188,

192-94 (3d Cir. 2000). Federal employee-plaintiffs, however, must exhaust "administrative remedies before filing suit against a federal employer under Section 504." *Id.* at 192; *see also Hoffman v. City of Bethlehem*, No. 16-CV-01581, 2016 WL 4318975, at *5 (E.D. Pa. Aug. 12, 2016) (Holding that "[p]laintiff was not required to exhaust administrative remedies before bringing suit because plaintiff is not a federal employee suing a federal employer under section 504 of the Rehabilitation Act."); *McKernan v. Consol. Rail Corp.*, No. 98-1758, 1999 WL 33117179, at *2 (W.D. Pa. June 29, 1999) ("A nonfederal employee may bring suit *only* under section 504, and thus, does not use section 504 as a means of circumventing any otherwise imposed exhaustion requirement.").

Here, Plaintiff alleges that the NESD is a recipient of federal assistance as opposed to a federal employer. (Doc. 9, at ¶ 4). As Plaintiff is also a non-federal employee of the NESD, the Court disagrees with the Defendants' contention that her Section 504 claims required administrative exhaustion. *See Freed*, 201 F.3d at 192-94; *Hoffman*, 2016 WL 4318975, at *5. Therefore, insofar as Defendants move to dismiss Counts 3 and 4 of the Amended Complaint based on the Plaintiff's failure to exhaust her administrative remedies, Defendants' motion will be denied.

### b. <u>Statute of Limitations</u>

In moving to dismiss Counts 3 and 4, Defendants also note that several of Plaintiff's allegations stem from the alleged denial of her requests for FMLA leave

in 2016. (Doc. 13, at 37). Accordingly, Defendants assert that Plaintiff has artfully

pleaded her claims under Section 504 in order to circumvent the two-year statute of

limitations period for FMLA claims. (*Id.*) Plaintiff responds that she has averred

sufficient facts to support her claims that are not time-barred.[7] (Doc. 14, at 20).

"Since Congress has incorporated Title VI's remedial scheme into the

Rehabilitation Act, plaintiffs alleging violations of Section 504 have a

private right of action under federal law." *Fowler v. UPMC Shadyside*, 578 F.3d

203, 207 n.2 (3d Cir. 2009) (citing *Three Rivers Center for Independent Living, Inc.*

*v. Housing Authority of Pittsburgh,* 382 F.3d 412, 425–426 (3d Cir. 2004)).

Additionally, Courts in this circuit have long recognized that Section 504 plaintiffs

may proceed under both hostile work environment and retaliation theories of

liability. *See Boandl v. Geithner*, 752 F. Supp. 2d 540, 571 (E.D. Pa. 2010) (citing

*Miller v. Cohen*, 52 F. Supp. 2d 389, 400 (M.D. Pa. 1998), *aff'd*, 185 F.3d 862 (3d

Cir. 1999)) (hostile work environment under Section 504); *Lauren W. ex rel. Jean*

---

[7] Notably, Plaintiff does not appear to invoke the continuing violation doctrine. The continuing violation doctrine is an "equitable exception to the timely filing requirement." *Cowell v. Palmer Tp.*, 263 F.3d 286, 292 (3d Cir. 2001). Specifically, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Id.* (quoting *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)). As Plaintiff does not address this doctrine, however, or otherwise demonstrate why it should extend to her Section 504 claims, the Court declines to consider its applicability here. *See Herring v. Chichester Sch. Dist.*, No. CIV.A. 06-5525, 2008 WL 436910, at *5 (E.D. Pa. Feb. 14, 2008) ("In the absence of [plaintiff's] argument on [the continuing violations doctrine], the court will not engage in that analysis."). !

*W. v. DeFlaminis*, 480 F.3d 259, 267 n.5 (3d Cir. 2007) (citing 34 C.F.R. § 100.7(e)) (retaliation under Section 504). The statute of limitations for claims asserted under Section 504 is two years. *See DiFrancesco v. Aramark Corp.,* 169 F. App'x 127, 129 (3d Cir. 2006); *Kedra v. Nazareth Hosp.,* 868 F. Supp. 733, 738 (E.D. Pa. 1994). Therefore, insofar as Defendants argue that Plaintiff attempts to improperly cast a cause of action under the FMLA as one arising under Section 504 to avoid the two-year statutory period, the Court is not persuaded by this contention.

### i. *Retaliation Claim*

To the extent that Plaintiff's retaliation claim involves individual causes of action that accrued before the two-year statute of limitations for Section 504 claims, however, these claims are time barred.[8] A claim accrues, and thus triggers the two-year statute of limitations, "in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994). Further, to satisfy the elements of a retaliation claim under Section 504, a plaintiff must show "(1) that [she] engaged in a protected activity, (2) that defendants'

---

[8] The "Third Circuit Rule" allows a statute of limitations defense to be raised in a Rule 12(b)(6) motion "only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.,* 514 F.2d 1092, 1094 (3d Cir. 1975). "'If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).'" *Id.* (quoting *Bethel v. Jendoco Constr. Corp.,* 570 F.2d 1168, 1174 (3d Cir. 1978)).

retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted). The third causation element can be established by alleging facts that show: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.*

Here, with respect to the first element, Plaintiff avers that notifying the NESD of her disabilities, requesting workplace accommodations based on her anxiety and depression, and repeatedly opposing its "practice of harassment and bullying" constituted "protected activity." (Doc. 9, at ¶¶ 107-08). Regarding the second element, Plaintiff alleges that the NESD retaliated against her on account of her protected activity by imposing disciplinary measures, relocating her office, failing to promote her, failing to interview her, and intimidating her for raising concerns of wrongdoing. (*Id.*, at ¶¶ 20, 111). As to the third element, Plaintiff claims that she received the disciplinary Letter in alleged retaliation for, and in temporal proximity to, her FMLA requests. (*Id.*, at ¶ 16).

The Amended Complaint establishes that Plaintiff requested FMLA leave on both February 23, 2016 and March 7, 2016 and received the disciplinary Letter on

April 8, 2016. (*Id.*, at ¶¶ 10, 13-14, 16). The Amended Complaint further claims that the NESD relocated Plaintiff's office on June 22, 2016. (*Id.* at ¶ 20). Even when read in the light most favorable to Plaintiff, these factual allegations suggest that Plaintiff became aware of any alleged injuries arising from the purported retaliatory Letter and office relocation as early as 2016. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994). As Plaintiff filed the original complaint against Defendants on March 4, 2020, any individual causes of action that stem from such 2016 actions fall outside the two-year statute of limitations for Section 504 claims.

Moreover, insofar as the Amended Complaint asserts that Defendants committed subsequent acts of retaliation within the two-year statutory period, Plaintiff fails to present any well-pleaded factual allegations to that effect. Specifically, Plaintiff does not plausibly allege the existence of either an "unusually suggestive temporal proximity" between her protected activity and the retaliatory conduct alleged or a pattern of antagonism that would otherwise support a causal link. *See DeFlaminis*, 480 F.3d at 267. For these reasons, the Plaintiff's Section 504 retaliation claim raised at Count 2 will be dismissed under FED R. CIV. P. 12(b)(6).

### c.  <u>Hostile Work Environment</u>

Notwithstanding any statute of limitations concerns raised by Defendants, the Court finds that Plaintiff's Section 504 hostile work environment claim is also

subject to dismissal. To state a claim for hostile work environment under Section 504, a plaintiff must allege the following five elements: "(1) the plaintiff suffered intentional discrimination because of [her] disability, gender, or age; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and (5) the existence of respondeat superior liability." *Cardenas v. Massey,* 269 F.3d 251, 260 (3d Cir. 2001). Here, when taken as true and read in the light most favorable to Plaintiff, the Amended Complaint fails to make sufficient allegations of pervasive and regular discrimination motivated by a discriminatory animus towards the Plaintiff's disabilities. For example, although Plaintiff alleges that agents of the Defendants "intentionally, negatively, and callously communicate[d] within the school about the Plaintiff's health issues" and "the fact that she became upset about the harsh treatment and bullying," she does not plead with particularity when, or how frequently, these statements were made. (Doc. 9, at ¶¶ 101-02). Therefore, the Court will dismiss Count 3 of the Amended Complaint under FED. R. CIV. P. 12(b)(6) for failure to state a Section 504 hostile work environment claim.

**3.** **State Law Claims Brought Under the Pennsylvania Human Relations Act (Counts 5 and 6)**

Finally, in Counts 5 and 6 of the Amended Complaint, Plaintiff brings state law claims against Defendants for alleged violations of the Pennsylvania Human

33

Relations Act ("PHRA"). Title 28 of the United States Code, Section 1367 governs jurisdiction over supplemental state law claims brought in federal court. Specifically, Section 1367(a) states that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This exercise of supplemental jurisdiction may be declined, however, if the court "has dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c)(3). The Third Circuit has further recognized that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (citing *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

As discussed *supra*, Plaintiff has failed to plead plausible causes of action for violations of the Fourteenth Amendment, Fourth Amendment, and RHA brought under Section 1983, over which this Court would have original jurisdiction. Finding that no affirmative justification to exercise supplemental jurisdiction exists at this time, the Court therefore declines to consider Defendant's arguments under Rule

12(b)(6) and will dismiss the Plaintiff's state law claims under the PHRA without prejudice.[9]

### 4. Leave to Amend

The Third Circuit has instructed that, when a complaint is vulnerable to dismissal under Rule 12(b)(6), a court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). This directive applies to both *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672 (3d Cir. 2014) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)).

At this time, having carefully considered the claims set forth in the Amended Complaint, the Court cannot conclude that it would be inequitable or futile for Plaintiff to file a second amended complaint against Defendants. Accordingly, the Court will grant Plaintiff leave to file a second amended complaint, in accordance with the directives for such set forth in the accompanying Order, within thirty (30) days.

---

[9] The Court similarly declines to consider the Defendants' argument regarding the applicability of high public official immunity, and whether the claims against Dr. Sidle and Mr. Gellar are redundant of the claims asserted against the NESD, with respect to Counts 5 and 6 of the Amended Complaint. (Doc. 13, at 42-46).

## V.    **CONCLUSION**

For the reasons set forth above, the Defendant's motion to dismiss will be granted in part and denied in part. (Doc. 10). Specifically, the Defendant's motion to dismiss Counts 1, 2, 3, and 4 of the Amended Complaint will be granted for failure to state a claim upon which relief may be granted under FED. R. CIV. P. 12(b)(6). The Defendants' motion will be denied, however, insofar as it seeks to dismiss Counts 1 and 2 on the basis of qualified immunity and Counts 3 and 4 on the basis of exhaustion. Additionally, the Court will decline to exercise supplemental jurisdiction over Counts 5 and 6 of the Amended Complaint but permit Plaintiff to file a second amended complaint within thirty (30) days of the date of the Order filed concurrently with this Memorandum. An appropriate order shall follow.


*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge


Dated: January 26, 2021

36