IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KATHY MINNICH,** | : | **Civil No. 1:20-CV-00378** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **NORTHEASTERN SCHOOL** | : | |
| **DISTRICT, STACEY SIDLE,** | : | |
| **Individual, BRIAN GELLER,** | : | |
| **Individual,** | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

**M E M O R A N D U M**

Before the court is a motion to dismiss Plaintiff Kathy Minnich's second amended complaint filed by the Defendants Northeastern School District, Stacey Sidle, and Brian Geller. (Doc. 20.) For the reasons set forth below, the motion will be granted in part and denied in part.

## I.   BACKGROUND

Plaintiff is a former employee of Defendant Northeastern School District ("NESD"). She began her employment with the NESD in 1999 as a school social worker and was later awarded a position as a long-term substitute school psychologist. (Doc. 19, at ¶¶ 3, 8, 10.) Plaintiff alleges she was recently constructively discharged by the school district due to its harassment, retaliation, and refusal to offer her a position as a permanent school psychologist. Defendant Stacey

1

Sidle became the Superintendent of the NESD in December 2016 and served as Plaintiff's supervisor. Defendant Brian Geller was employed by the NESD as a Director of Operations. (*Id.* at ¶¶ 5-6.)

Plaintiff alleges that Defendants mistreated her for several years during her employment dating back to at least 2016. According to the complaint, in February and March 2016, Plaintiff twice requested workplace accommodations under the Family Medical Leave Act in order to attend therapy sessions for herself and her children after her former spouse, Shawn Minnich, broke into her home. Mr. Minnich served as the NESD Superintendent at the time, and he was eventually sentenced to jail for the break-in. (*Id.* at ¶¶ 12, 15, 64.) Plaintiff alleges that the event caused her to suffer anxiety and panic attacks and her children post-traumatic stress disorder. (*Id.* at ¶¶ 14-16, 64.) According to the second amended complaint, the NESD's board denied both leave requests despite being aware of Plaintiff's condition. (*Id.* at ¶¶ 14, 16.)

On April 4, 2016 and April 5, 2016, Plaintiff participated in an investigative hearing held by the Pennsylvania Department of Education regarding Mr. Minnich. (*Id.* at ¶ 17.) A few days later, Plaintiff received a formal letter of reprimand, which was the first disciplinary action she received in her 17 years with the school district. (*Id.* at ¶ 18.) Plaintiff alleges that the letter contained inaccurate information and was issued in retaliation for her involvement in the hearing and her FMLA leave requests.

(*Id.* at ¶¶ 18, 20.) According to Plaintiff, Dr. Sidle subsequently admitted during a meeting that she had received "pressure from above" to hold Plaintiff accountable for her actions at the hearing. (*Id.* at ¶¶ 21-22.)

Plaintiff alleges that she was subject to further retaliation in June 2016 when she was informed that her office was being relocated in order to accommodate a floater nurse. (*Id.* at ¶ 23.) She alleges that Mr. Minnich had previously threatened to move her office and that the decision to do so was motivated by Mr. Minnich's desire to undermine her professional status within the school district. (*Id.*)

Plaintiff further avers that in August 2016, Dr. Sidle and other school officials broke into her locked office and filing cabinet in order to locate her personal records and to harass and humiliate her. (*Id.* at ¶¶ 25-27.) Plaintiff had kept personal, financial, and medical records in the locked filing cabinet, and Mr. Minnich had previously broken into the cabinet on multiple occasions. (*Id.* at ¶ 24, 36.)

On December 23, 2016, Plaintiff filed a dual charge with the Equal Opportunity Employment Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging that she was being targeted for retaliation and harassment by the NESD and Dr. Sidle. (*Id.* at ¶ 58.) On April 18, 2017, the EEOC issued a right to sue letter, but Plaintiff took no action on the letter. On July 9, 2019, the PHRC issued a right to sue letter. (*Id.* at ¶¶ 67, 69.)

Plaintiff alleges that in March 2018, she met with Dr. Sidle "regarding the continuing hostile work environment at NESD" and "focusing on her health issues." (*Id.* at ¶ 39.) She subsequently followed up by email with Dr. Sidle, who responded by "attempting to absolve the school district of any liability for the hostile work environment." (*Id.*) Plaintiff also alleges that at an NESD meeting in October 2018, she raised "her continuing concerns with the bullying and hostile work environment," which included "a pattern of continued harassment related to her attempts to seek accommodations for doctors' visits for her and her children[.]" (*Id.* at ¶ 40.)

In November 2018, Plaintiff discovered that in early April 2016, Mr. Gellar had shared her phone records and personal calendars with third parties, including Mr. Minnich and his attorney, without her consent. (*Id.* at ¶¶ 42, 97.) Plaintiff claims that her cellphone was provided by the NESD but used for both personal and professional reasons. (*Id.* at ¶ 42.) Plaintiff avers that these records fell outside the scope of Pennsylvania's Right to Know Law ("RTKL"), and that Mr. Gellar subsequently admitted to wrongdoing regarding the release of her information. (*Id.* at ¶¶ 43, 50, 55.) According to the SAC, Mr. Gellar released the information in an effort to "harass and intimidate and jeopardize her family's safety," and Plaintiff attempted to raise her privacy concerns with the NESD and Dr. Sidle on several occasions in 2018 and 2019. (*Id.* at ¶¶ 49, 54.)

4

In June 2019, Plaintiff applied for a position as a permanent school psychologist with the NESD. (*Id.* at ¶¶ 10, 68i.) Despite her 20-year tenure with the NESD, Plaintiff neither secured an interview for the position nor received notification when the job was filled. (*Id.* at ¶ 68j.) On June 16, 2019, Plaintiff's union filed a successful grievance against the NESD, which resulted in Plaintiff being awarded a position as a long-term substitute school psychologist. (*Id.* at ¶¶ 10, 68k.) Plaintiff later applied for another position as a school psychologist, and she was interviewed for the job in September 2020 and October 2020. (*Id.* at ¶ 11.) Dr. Sidle nevertheless recommended a different candidate for the job, and the NESD ultimately declined to hire Plaintiff. (*Id.* at ¶ 99.) According to the SAC, Dr. Sidle recommended another candidate as retaliation for Plaintiff's prior complaints of harassment and hostile work environment. (*Id.* at ¶ 99.) The SAC alleges that the hiring decision was akin to a constructive discharge because it forced Plaintiff to seek another similar position in a different district and give her up tenure with the NESD. (*Id.* at ¶ 100.)

On March 4, 2020, Plaintiff initiated this action by filing a complaint, which she subsequently amended on May 31, 2020. (Docs. 5, 9.) In June 2020, Defendants filed a motion to dismiss the amended complaint, which the court granted in part and denied in part, and Plaintiff was granted leave to amend. (Docs. 16, 17.)

On February 15, 2021, Plaintiff filed the second amended complaint (the "SAC"), which is the operative pleading in this action. (Doc. 19.) Count 1 asserts a Section 1983 claim for due process violation under the Fourteenth Amendment against the NESD and Dr. Sidle; Count 2 asserts a Section 1983 claim for illegal search and seizure under the Fourth Amendment against all Defendants; Count 3 asserts a claim for hostile work environment under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504" or "RHA") against the NESD; Count 4 asserts a claim for retaliation under Section 504 of the RHA against the NESD; Count 5 asserts a claim for hostile work environment under the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. §§ 951, *et seq.* ("PHRA") against the NESD and Dr. Sidle; and Count 6 asserts a claim for retaliation under the PHRA against the NESD and Dr. Sidle. On March 1, 2021, Defendants filed a motion to dismiss the SAC. (Docs. 20, 23.) The motion has been fully briefed and is ripe for review.

## II.   **STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). In reviewing a 12(b)(6) motion, the court must "accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them." *Taksir v.*

*Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018) (citation omitted). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2012)*.* First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id. at 365*. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

III.   **DISCUSSION**

   a.   **The SAC fails to state a Fourteenth Amendment Due Process claim under 42 U.S.C. § 1983.**

Defendants move to dismiss Count 1 of the SAC, which alleges a claim for substantive due process violation under 42 U.S.C. § 1983 against the NESD and Dr.

Sidle. Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

The Supreme Court has recognized a constitutional right to privacy under the Due Process Clause that safeguards "the individual interest in avoiding the disclosure of personal matters." *See Whalen v. Roe*, 429 U.S. 589, 599 (1977). "The touchstone of constitutional privacy protection is whether the information at issue is 'within an individual's reasonable expectations of confidentiality.'" *Doe v. Luzerne Cty.*, 660 F.3d 169, 175 (3d Cir. 2011) (quoting *Malleus v. George*, 641 F.3d 560, 564 (3d Cir. 2011) *as amended* (June 6, 2011)). The Third Circuit has found that constitutionally protected personal matters include: an individual's "privacy interest in his or her partially clothed body," *Doe by & through Doe v. Boyertown Area Sch.*

8

*Dist.*, 897 F.3d 518, 527 (3d Cir. 2018); "a private employee's medical information that was sought by the government; medical, financial and behavioral information relevant to a police investigator; a public employee's prescription record; a minor student's pregnancy status; sexual orientation; and an inmate's HIV-positive status." *Luzerne Cty.*, 660 F.3d at 176 (citing *Malleus*, 641 F.3d at 564) (collecting cases).

Here, the SAC alleges that Defendants violated Plaintiff's Fourteenth Amendment right to privacy by disclosing her personal cellphone records and calendars to third parties without her consent or notice. (Doc. 19, at ¶ 42.) It alleges that the records contained information pertaining to Plaintiff's appointments with physicians and therapists, including the names and contact information for those medical professionals. (Doc. 19, at ¶¶ 44-46.) According to the SAC, Defendants disseminated this information to Mr. Minnich and his attorney notwithstanding the fact that Mr. Minnich had previously broken into Plaintiff's home. (*Id.* at ¶ 48.) Plaintiff asserts that disclosing these records enabled Mr. Minnich to track her movements and identify those people that were investigating his criminal conduct.[1] (*Id.* at ¶¶ 44-45, 47.)

Defendants correctly argue that the SAC fails to state a claim for a violation of Plaintiff's Fourteenth Amendment right to privacy. The SAC's allegations that

---

[1] Plaintiff appears to abandon her previous Fourteenth Amendment claim alleging the deprivation of a protected interest based on reputational harm. Accordingly, the claim need not be addressed.

Defendants disclosed Plaintiff's physician names and appointment times does not show that Defendants revealed confidential medical information regarding Plaintiff's "body and state of health" in which she had a constitutionally protected privacy interest.[2] *See United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) ("There can be no question that . . . medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection."); *Luzerne Cty.*, 660 F.3d at 176.

Likewise, the SAC fails to allege facts showing that the disclosure of Plaintiff's calendar entries and the identities of the individuals investigating Mr. Minnich jeopardized Plaintiff's fundamental right to personal safety and bodily integrity.[3] *See Barber v. Overton*, 496 F.3d 449, 456 (6th Cir. 2007) (holding that the disclosure of prison guards' social security numbers and birthdates to inmates did not implicate a constitutional privacy interest because the information "was not sensitive enough nor the threat of retaliation apparent enough to warrant constitutional protection"). While Plaintiff alleges that she had an order for protection from abuse against Mr. Minnich, there is no suggestion in the SAC that

---

[2] Plaintiff fails to cite to any authority, and the court has not found any, that stands for the proposition that the identity of an individual's healthcare provider, in and of itself, falls within a constitutional zone of privacy.

[3] The Plaintiff's allegation that Defendants violated various provisions of the RTKL does not alter the court's conclusion, as "Section 1983 does not provide a cause of action for violations of state statutes." *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) (citing *Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990)).

the disclosure of her appointment times placed her at substantial risk of serious bodily harm from a perceived likely threat, or even that the disclosure provided Mr. Minnich access to Plaintiff that he did not otherwise have. Accordingly, the SAC's allegations fail to show that the information at issue was constitutionally protected or that it otherwise implicated a fundamental right, and the court will grant the Defendants' motion to dismiss Count 1 of the SAC.

> **b.** **The SAC adequately states a claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment against Dr. Sidle and Mr. Gellar.**

Defendants also move to dismiss Count II of the SAC, which alleges a claim for Fourth Amendment violation under 42 U.S.C. § 1983. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. U.S. CONST. amend. IV. While often considered in the context of criminal investigations, the Supreme Court has held that the Fourth Amendment applies "when the Government acts in its capacity as an employer." *City of Ontario v. Quon*, 560 U.S. 746, 755 (2010). To invoke the protections of the Fourth Amendment, a government employee must show that the employer's conduct infringed "an expectation of privacy that society is prepared to consider reasonable'" and that the search was unreasonable at its inception and in its scope. *See O'Connor v. Ortega*, 480 U.S. 709, 715, 725-26 (1987) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). In the workplace context, "employees may be entitled to a reasonable

expectation of privacy in the contents of documents stored in the workplace, both in the private and public sectors." *Walker v. Coffey*, 905 F.3d 138, 148 (3d Cir. 2018). The reasonableness of an expectation of privacy, however, "must be assessed in the context of the employment relation" on a case-by-case basis. *See O'Connor*, 480 U.S. at 717-18.

Here, the SAC alleges that Defendants violated Plaintiff's Fourth Amendment rights by searching areas in which she had a reasonable expectation of privacy, including her locked office space, locked filing cabinet, personal calendars, and the contents of her files. (Doc. 19, at ¶ 116.) According to Plaintiff, her office is a part of a suite that contains five individual and separate office spaces, one of which remained vacant, and the other of which was used as a common area. (*Id.* at ¶ 30.) Plaintiff alleges that the suite had two entrances that remained locked at all times. (*Id.* at ¶ 31.) Plaintiff further avers that within her personal office space, she kept a locked four-drawer filing cabinet. One drawer contained sensitive student records relating to Plaintiff's position as a school psychologist, including student mental health evaluations and Plaintiff's clinical impressions. (*Id.* at ¶¶ 32-33.) A different drawer contained Plaintiff's own personal records, including her medical records, financial documents, and appointment information. (*Id.* at ¶¶ 34-35.)

Defendants' motion argues that Plaintiff's Fourth Amendment claim should be dismissed because she did not have a reasonable expectation of privacy in her

school office, desk, and files, since her office was owned by the school district and located in an area where other employees and visitors had access. This argument is not persuasive, as the facts alleged in the SAC make clear that, notwithstanding the presence of other employees within the office suite, Plaintiff exercised exclusive control over the filing cabinet located within her own individual office space. Considering this exclusive control, as well the nature of Plaintiff's duties to maintain sensitive student records and her practice of locking the filing cabinet, the court finds that the SAC plausibly alleges that Plaintiff had a reasonable expectation of privacy in the contents of her locked filing cabinet. *See Gillard v. Schmidt*, 579 F.2d 825, 828 (3d Cir. 1978) (holding that "a guidance counselor, charged with maintaining sensitive student records, in the absence of an accepted practice or regulation to the contrary, enjoys a reasonable expectation of privacy in his school desk."); *see also Konopka v. Borough of Wyoming*, 383 F. Supp. 2d 666, 678–80 (M.D. Pa. 2005) (holding that, despite the fact that plaintiff shared his office with other individuals and did not own the space where the office was located, plaintiff had a reasonable expectation of privacy in his desk contents when he kept the drawers locked and was the only person with access to them); *DeMaine v. Samuels*, No. 3:99CV34 (JBA), 2000 WL 1658586, at *8 (D. Conn. Sept. 25, 2000), *aff'd*, 29 F. App'x 671 (2d Cir. 2002) (finding that plaintiff "may have had an objectively reasonable expectation of

privacy in his personal day planner" that employer searched and seized when "it contained only personal information").[4]

In addition, the court finds that the SAC adequately alleges that the search was unreasonable at its inception and in its scope. A search is reasonable at its inception when there are "reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct, or that the search is necessary for a noninvestigatory work-related purpose such as to retrieve a needed file." *O'Connor*, 480 U.S. at 726. Additionally, a search is reasonable in scope when the "measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of . . . the nature of the" alleged misconduct. *Id.* (internal quotation and citation omitted). The SAC alleges sufficient facts to create a plausible inference that Defendants lacked justification to search Plaintiff's office and seize her personal records without consent, and Defendant's motion makes no substantive argument that the search was justified by reasonable business practices, work-related investigations, or some other reason. As such, the court cannot conclude that the search of the Plaintiff's filing cabinet and its contents was

---

[4] To the extent that Plaintiff alleges that Defendants violated her Fourth Amendment rights by searching records from her school phones, any such claim fails because under the circumstances, Plaintiff did not have a reasonable expectation of privacy in the numbers that she dialed from her work telephones. *Cf Smith v. Maryland*, 442 U.S. 735, 742-43 (1979).

reasonable as a matter of law, and the complaint thus adequately states a Fourth Amendment claim.

Next, Defendants argue that Dr. Sidle and Mr. Gellar are entitled to qualified immunity to the extent they are named as Defendants in their individual capacities. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The Third Circuit has noted that "the importance of resolving qualified immunity questions early 'is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." *Phillips v. County of Allegheny*, 515 F.3d 224, 242 n.7 (3d Cir. 2008) (citing *Curley v. Klem*, 298 F.3d 271, 277–78 (3d Cir. 2002)).

At issue is thus whether a reasonable school official would understand that intrusions into employee office areas and locked filing cabinets violated the Fourth Amendment when the intrusion was neither routine nor related to investigations of workplace malfeasance. As discussed above, it is well-settled that Fourth Amendment protections extend to "searches and seizures by government employers or supervisors of the private property of their employees," including desks or filing cabinets that are not shared with any other employees. *See O'Connor*, 480 U.S. at

15

718-19; *see also Gillard v. Schmidt*, 579 F.2d 825, 829 (3d Cir. 1978) (finding that employer's ownership of employee's desk did not defeat Fourth Amendment claim). Additionally, it is clearly established that warrantless workplace searches of constitutionally protected areas are unreasonable when unrelated to allegations of employee misconduct or the routine conduct of business. *Id.* at 722, 726. Accordingly, the court is persuaded that the contours of the constitutional right at issue were sufficiently clear at the time of the search of Plaintiff's office filing cabinet and personal calendars. Therefore, the court will deny the Defendants' motion to dismiss Count 2 of the SAC on the grounds of qualified immunity.

To the extent Plaintiff alleges municipal liability arising from Dr. Sidle's and Mr. Gellar's alleged Fourth Amendment violation, however, the SAC fails to state a claim. "Municipal employers, such as school districts . . . cannot be held vicariously liable for the constitutional violations committed by their employees." *Moeck v. Pleasant Valley Sch. Dist.*, 983 F. Supp. 2d 516, 524 (M.D. Pa. 2013) (citing *Monell v. NYC Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)). Rather, "[m]unicipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation." *Id.* (citing *Watson v. Abington Twp.,* 478 F.3d 144, 155 (3d Cir. 2007)). Specifically, "[l]iability is imposed 'when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of

its employees.'" *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014)

(quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)).

Municipal liability may also arise based on a failure to train theory of liability.

In such a scenario, "liability under section 1983 requires a showing that the failure

amounts to 'deliberate indifference' to the rights of persons with whom those

[untrained] employees will come into contact." *Carter v. City of Phila.*, 181 F.3d

339, 357 (3d Cir. 1999) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Generally, "a pattern of constitutional violations by untrained employees" is

required to establish "deliberate indifference for the purposes of failure to train," as

this "puts municipal decisionmakers on notice that a new program is necessary."

*Thomas*, 749 F.3d at 223 (quotations and citations omitted). Single incident liability

may arise, however, if "the need for training 'can be said to be 'so obvious,' that

failure to do so could properly be characterized as 'deliberate indifference' to

constitutional rights.'" *Id.* (quoting *City of Canton*, 489 U.S. at 390 n.10).

Here, Defendants correctly argue that the SAC fails to state a viable *Monell*

claim against the NESD because it does not contain any facts to suggest that a policy,

custom, practice, or lack of training by the NESD caused Plaintiff's injuries. As with

Plaintiff's first amended complaint, the SAC fails to allege facts showing a pattern

of constitutional injuries committed by untrained employees, and it avers only

generally that the NESD acquiesced in constitutional violations by failing to adopt

policies to protect employee rights and by failing to properly train employees to follow its policies with respect to employee rights. (*See e.g.,* Doc. 19, at ¶ 71-72.) Plaintiff's allegations in this respect are conclusory and do not give rise to a plausible inference that the existence of a custom or policy served as the moving force behind the alleged Fourth Amendment violation. *See City of Okla. City v. Tuttle,* 471 U.S. 808, 820 (1985) ("Proof of a single instance of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). Therefore, insofar as Plaintiff asserts a *Monell* claim against the NESD under Section 1983 and Count 2, the court will grant the Defendants' motion to dismiss because the SAC does not cure the pleading deficiencies previously identified with respect to asserting municipal liability.

     **c.**  **Claims asserted in the SAC under Section 504 of the RHA based upon Plaintiff's April 2016 disciplinary letter and the June 2016 relocation of her office are time barred.**

Counts 3 and 4 of the Amended Complaint assert claims against the NESD under Section 504 of the RHA for hostile work environment and retaliation based on Plaintiff's disabilities (anxiety and depression) and request for medical accommodations. (Doc. 19, at ¶¶ 124-140). Section 504 of the RHA prohibits federal agencies and private entities that receive federal funding from discriminating against

individuals on the basis of their disability. 29 U.S.C. § 794(a); *see Freed v. Consolidated Rail Corp.,* 201 F.3d 188, 191 (3d Cir. 2000).

Defendants' motion argues that Plaintiff's RHA claims stemming from events in 2016 should be dismissed as time barred. The statute of limitations for claims asserted under Section 504 is two years. *See Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008). A claim accrues when the potential claimant is aware of or should be aware of the existence and source of an injury. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994). Plaintiff commenced this action on March 4, 2020 and therefore any claims that accrued prior to March 4, 2018 are untimely.

Plaintiff acknowledges that the SAC avers facts dating back to 2015 and 2016, but she argues that her RHA claims are timely under a continuing violations theory. (Doc. 24, at 22-23). The continuing violation doctrine constitutes "an equitable exception to the timely filing requirement," and applies "when a defendant's conduct is part of a continuing practice . . . [and] the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Cowell v. Palmer Tp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am*., 927 F.2d 1283, 1295 (3d Cir. 1991)). The doctrine does not extend to discrete acts that are individually actionable such as

19

"termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). Although discrete time-barred claims may not be resurrected by aggregating and labeling them as continuing violations, an employee may reference the underlying actions as background evidence to support a timely claim. *Morgan*, 536 U.S. at 113.

Here, the SAC alleges various acts of harassment and retaliation that occurred prior to March 4, 2018, including the issuance of the April 2016 disciplinary letter and the June 2016 relocation of Plaintiff's office. These averments describe discrete acts that Plaintiff knew of at the time of their occurrence in 2016, and they are therefore time-barred. *See O'Connor*, 440 F.3d at 127 (wrongful discipline); *see also Sgro v. Bloomberg L.P.,* No. 05-CV-731, 2008 WL 918491, at * 5–6 (D.N.J. March 31, 2008), *aff'g in part, rev'd in part,* 331 F. App'x 932 (3rd Cir. 2009) (noting that an office move to an undesirable location is a discrete act that is not subject to the continuing violation doctrine); *Griffin v. Dep't of Hum. Servs.*, No. 18-CV-14697, 2019 WL 3369783, at *3 (D.N.J. July 26, 2019) (same).

According to the SAC, the alleged RTKL requests and search of Plaintiff's office also occurred in 2016. However, as Plaintiff alleges that she did not become aware of the RTKL disclosures until November 2018, the court cannot find at this

stage that her RHA claims based on the disclosures are time barred as a matter of law. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994). Similarly, it would be premature to dismiss Plaintiff's RHA claims based on the search of her office because the SAC does not facially show when the claims accrued, and because the court cannot discern whether Plaintiff discovered or reasonably should have discovered prior to March 4, 2018 that her office had been searched. *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). The court will therefore grant Defendants' motion to dismiss Plaintiff's RHA claims asserted in Counts 3 and 4 to the extent the claims rely upon the issuance of the April 2016 disciplinary letter and the June 2016 relocation of Plaintiff's office.

> **d.  The SAC fails to state claims for hostile work environment under Section 504 of the RHA and the PHRA.**

Defendants further contend that Plaintiff's remaining claims for hostile work environment under Section 504 of the RHA and the PHRA, as asserted in Counts 3 and 5, should be dismissed. To state a claim for hostile work environment under Section 504, a plaintiff must allege that: "(1) the plaintiff suffered intentional discrimination because of [her] disability, gender, or age; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and (5) the existence of respondeat superior liability." *Cardenas v. Massey,* 269 F.3d 251, 260 (3d Cir. 2001). Similarly, to state

a claim for hostile work environment under the PHRA, a plaintiff must allege that: "(1) she is a qualified individual with a disability under the ADA, (2) she was subject to unwelcome harassment, (3) the harassment was based on her disability or request for an accommodation, (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (5) the employer knew or should have known of the harassment and failed to take prompt, effective remedial action." *Lowenstein v. Cath. Health E.,* 820 F. Supp. 2d 639, 646–47 (E.D. Pa. 2011). The Third Circuit has held that the RHA and PHRA "have the same standard for determination of liability" and should be interpreted consistently.  *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012).

Here, Plaintiff alleges that the various incidents considered together created a hostile work environment, including the following:

- Defendants' improper disclosure of Plaintiff's personal information pursuant to RTLK requests in 2016 and the August 2016 search of Plaintiff's office (Doc. 19, ¶¶ 25, 27, 42, 43, 54);

- Defendants' failure to address comments "regarding Plaintiff" that were posted to social media by a staff member in April 2017, comments "regarding the Minnich family" that were posted to social media by a different staff member in February 2018 and March 2019, and phone calls made to Plaintiff's child asking about Mr. Minnich in March 2018 (*id*. at ¶¶ 68a-b, f);

- Defendants' failure to investigate "loud statements about Mr. Minnich's release from jail" that were made by cafeteria workers in March 2018 (*id.* at ¶ 68c); and other reports of alleged harassment made by Plaintiff in March, October, and November 2018 (*id.* at ¶¶ 68d, 68e, 68g, 127);

- Defendants' failure to interview Plaintiff for the position of school psychologist in July 2019 and failure to hire Plaintiff for another school psychologist position in October 2019 (*id.* at 68j, 99).

When taken as true and considered in their totality, these allegations are insufficient to state a hostile work environment claim under the RHA and PHRA. While the SAC alleges that Plaintiff's anxiety was exacerbated by mere discussion of Mr. Minnich and that Defendants had knowledge of Plaintiff's condition, nothing in the SAC supports a plausible inference that Defendants discriminated against Plaintiff based on her condition or otherwise took any employment action based on discriminatory animus. *See Boandl v. Geithner*, 754 F. Supp. 2d 540, 572 (E.D. Pa. 2010) (finding plaintiff failed to set forth a hostile work environment claim when he did not allege that the harassment he suffered was based on his disability as opposed to isolated criticisms regarding his work performance). To the extent Plaintiff alleges that she suffered from harassment and intimidation due to her anxiety disability, the allegations are conclusory and fail to support any such inference. The SAC thus does not adequately plead that Defendants subjected Plaintiff to "intentional

23

discrimination because of [her] disability, gender, or age." *See Cardenas v. Massey,* 269 F.3d 251, 260 (3d Cir. 2001). As such, Plaintiff's hostile work environment claims asserted in Count 3 and Count 5 will be dismissed.

      e. **The SAC fails to state claims for retaliation under Section 504 of the RHA and the PHRA.**

Defendants additionally argue that Plaintiff's claims for retaliation under Section 504 of the RHA and the PHRA as asserted in Counts 4 and 6 should be dismissed. To establish a retaliation claim under Section 504, a plaintiff must demonstrate "(1) that [she] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted). A causal connection may be shown by demonstrating "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.* In addition, to state a retaliation claim under the PHRA, the plaintiff must plausibly allege: "(1) a protected employee activity, (2) an adverse employment action, and (3) a causal connection between the protected activity and the adverse action." *MacVaugh v. Cty. of Montgomery*, 301 F. Supp. 3d 458, 465 (E.D. Pa. 2018). As with Plaintiff's hostile work environment claims, claims for retaliation under the

RHA and PHRA are assessed using the same the standard for liability. *Macfarlan*, 675 F.3d at 274.

Here, Plaintiff alleges that Defendants retaliated against her due to her anxiety and depression, her requests for workplace accommodations, and her repeated opposition to the school district's "practice of harassment and bullying" between 2016 and 2020. (Doc. 19, at ¶¶ 136-39.) According to Plaintiff, these acts of retaliation included failing to interview her for a school psychologist position in June 2019 and failing to hire her for different school psychologist position in October 2020. (Id. at ¶¶ 11, 68i, 68j, 99.) Defendants correctly argue that these allegations fail to satisfy the causation element for a retaliation claim. The SAC does not allege facts showing that Plaintiff engaged in any protected activity close in time to June 2019 or October 2020 so as to suggest unusual temporal proximity. According to the SAC, prior to not being selected for an interview June 2019, Plaintiff's most recent complaint regarding harassment had occurred approximately seven months earlier in October 2018. (*Id*. at ¶¶ 68g, 68i, 68j.) Nor does the SAC set forth sufficient facts showing a pattern of antagonism toward Plaintiff coupled with timing. Plaintiff's allegations in this respect rely heavily on Defendants' willingness to do Mr. Minnich's bidding and their failure to take Plaintiff's concerns and complaints more seriously, but the facts set forth do not permit an inference that Defendants' treatment of Plaintiff was linked to a protected activity or otherwise designed to

dissuade Plaintiff from exercising her rights. Consequently, the SAC fails to state a claim for retaliation under the RHA and PHRA and Count 4 and Count 6 will be dismissed.

## IV.   **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss will be granted in part and denied in part as follows: Count I, Count 3, Count 4, Count 5, and Count 6 will be dismissed with prejudice and Count 2 will be dismissed with prejudice as asserted against Defendant Northeastern School District. An appropriate order shall follow.

_s/Sylvia H. Rambo_
SYLVIA H. RAMBO
United States District Judge

Dated: July 27, 2021