IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHY MINNICH, | : No. 1:20-CV-00378 |
| Plaintiff, | : |
| v. | : |
| STACEY SIDLE, et al., | : |
| Defendants. | : Judge Sylvia H. Rambo |

# M E M O R A N D U M

Before the Court is the motion for summary judgment filed by Defendants Stacey Sidle and Brian Geller. (Doc. 40.) For the reasons set forth below, the motion will be granted.

## I.   BACKGROUND

This action arises from Plaintiff Kathy Minnich's claims that during her employment as a social worker with the Northeastern School District, her former supervisor, Defendant Stacey Sidle, and former colleague, Defendant Bryan Geller, violated her rights under the Fourth Amendment by breaking into and searching her office filing cabinet.

Plaintiff was employed by the school district as a social worker from August 1999 through January 2020. (Doc. 42 ¶ 1.) Plaintiff's direct supervisor was Sidle, who served as Assistant Superintendent during the relevant period. (Doc. 42 ¶ 4.) Her "second tier" supervisor was Superintendent Shawn Minnich, who was also

Plaintiff's former husband at the time, and who had history of violent behavior toward Plaintiff.[1] Plaintiff alleges that Sidle, together with Defendant Brian Geller, who served as the school district's Right to Know Officer, assisted Mr. Minnich in breaking into Plaintiff's filing cabinet. (Doc. 42 ¶ 19.)

In August 2015, Plaintiff walked into her office and observed that her filing cabinet was "jacked up" and messy. (Doc. 42 ¶ 18; Doc. 45 ¶ 18.) The drawers would not properly close or lock and they appeared to have been rifled through. (Doc. 46-2 p. 13.) Though Plaintiff was unsure of whether any items had been taken, she testified "[e]verything was disheveled, disorganized, a mess. Not the way I keep things at all." (*Id*.)

Plaintiff's office at the time was located in the school district's "ninth grade annex" building, which was attached to the main high school building through a long hallway. (Doc. 46-2 pp. 11-12.) Inside the annex was an office suite, comprising a common room and the offices of Plaintiff and two other employees. (*Id*. p. 11; Doc. 46-3 p. 15.) The suite had two doorway entrances that remained locked and required a key to enter. (Doc. 46-2 p. 10; Doc. 46-3 p. 14.) The filing cabinet in Plaintiff's office contained four drawers that locked with a single lock and key. (Doc. 46-2 p. 12.) The cabinet came with two keys, both of which were provided to Plaintiff. (*Id*.)

---

[1] It is unclear but immaterial whether Plaintiff and Mr. Minnich were divorced or instead separated during the relevant period in 2015.

Plaintiff was unaware of anyone else who possessed a key. (*Id.*) The cabinet drawers contained student records as well as Plaintiff's medical/banking records, therapy records related to Plaintiff and her children, and Plaintiff's calendar. (*Id.* pp. 12-13.)

Plaintiff contemporaneously reported the break-in to, among other people, Connie Sutton, who served as a building principal secretary at the time and had a workstation just outside Plaintiff's office suite. (Doc. 46-3 p. 15.) Though she could not look directly into Plaintiff's office from her workspace, anyone entering the suite to Plaintiff's office would have had to walk near Ms. Sutton's desk or the glass windows to her office. (*Id.* pp. 17-18.) According to Plaintiff, Sutton responded by informing Plaintiff that she had witnessed Mr. Minnich coming out of Plaintiff's office. (Doc. 46-2 pp. 14-15.) Ms. Sutton testified later that she remembered speaking with Plaintiff about the break-in, but she could not recall the particulars of the conversation. (Doc. 46-3 pp. 7-8.)

Ms. Sutton did recall, however, two instances in which she observed people around the area of Plaintiff's office. On one occasion, Ms. Sutton observed Mr. Minnich in or around the area of Plaintiff's office suite. (*Id.* pp. 21-24.) Ms. Sutton did not remember Mr. Minnich saying anything or having anything in his possession, and while she could not remember when the incident occurred, she did explain that the school "was empty" at the time, "so it might have been over the summer." (*Id.*) Ms. Sutton testified the encounter was outside of routine, and that she informed

3

Plaintiff about her observation because "I just had an uneasy feeling about it." (*Id.* p. 26.) On another occasion, Ms. Sutton recalled, she observed Mr. Minnich and Stacey Sidle near her office, in a mail room located directly outside Plaintiff's office suite, "very early" in the morning when she would not normally have expected to see them there. (Doc. 46-3 pp. 10-11.)

Defendants have filed a motion for summary judgment, which argues that Plaintiff has not adduced sufficient evidence to establish their involvement in the break-in and search of Plaintiff's filing cabinet. (Doc. 40.) The motion has been fully briefed and is ripe for review.

## II.  STANDARD OF LAW

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and

draw all reasonable inferences in its favor. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)).

### III. **DISCUSSION**

The Fourth Amendment to the Constitution provides "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." To establish a claim under the Fourth Amendment, a plaintiff must show that the defendant's actions constituted a search or seizure and were "unreasonable" in light of the surrounding circumstances. *See Brower v. Cty. of Inyo*, 489 U.S. 593, 595–600 (1989).

As an initial matter, Defendants' motion correctly argues Geller is entitled to summary judgment because there is no evidence to suggest his involvement in searching Plaintiff's filing cabinet or seizing her property. There is no indication in the record that Geller was ever observed in or around Plaintiff's work area or that he otherwise provided assistance to those that did commit the break-in. Plaintiff's theory that Geller was involved in the matter relies on his production of documents, in his capacity as Right to Know officer, which occurred approximately eight months after the break-in. (*See* Doc. 46 pp. 9-10.) But by all appearances, the records produced came from the school district's payroll system, not Plaintiff's filing cabinet. (*See* Doc. 42 ¶¶ 68-71; Doc. 45 ¶¶ 68-71.) Plaintiff does not offer any evidence or even substantive argument to the contrary, other than to suggest that Geller lacked diligence in handling the Right to Know Request and felt pressured to produce the information, considerations which in no way implicate him in the

underlying alleged constitutional violation. (Doc. 46 pp. 8-10.) Geller's request for summary judgment will therefore be granted.

Plaintiff's Fourth Amendment claim against Sidle fares no better. The only evidence of Sidle's involvement in the break-in is Sutton's vague memory that she saw Sidle and Mr. Minnich in a mail room outside Plaintiff's office suite very early one morning. There is no reason to believe the encounter took place on the day of the break-in, however, and the record supports just the opposite. Ms. Sutton testified she could not recall what occurred that day, and according to Plaintiff herself, Ms. Sutton's prior statement made contemporaneously with the break-in identified only Mr. Minnich as being in the area of Plaintiff's office. The sole reasonable inference from this evidence is that, among the two incidents Ms. Sutton recalled in her deposition, her encounter with Mr. Minnich occurred on or around the day of the break-in, and her encounter with both Mr. Minnich and Sidle did not. Sidle's presence with Mr. Minnich in the vicinity of her own subordinate's office, on an unknown date, represents no more than a "scintilla" of evidence of her involvement in the alleged Fourth Amendment violation and is insufficient to stave off summary judgment. *Saldana*, 260 F.3d at 232.

Moreover, even assuming Ms. Sutton's testimony would otherwise present an issue of material fact as to Sidle's involvement in the break-in, the issue is resolved by Sidle's own explanation for her presence in the area. Sidle testified that on one

occasion, after requesting permission from the school board to hire a second nurse, she and Mr. Minnich visited Plaintiff's shared office suite to determine whether it contained sufficient space and was suitable for the new employee to be stationed there.[2] (Doc. 46-5 p. 21.) Plaintiff's opposition brief dubs this testimony "clever[]" and argues that Sidle "cannot recall the time" of her visit. (Doc. 46 p. 5.) But the broader record does not contradict or call into question Sidle's version of the events, and it does not appear that Sidle was even asked about the time of day. (*See* Doc. 46-5 p. 21.) Considering the vagueness of Ms. Sutton's own recollection of the encounter—Ms. Sutton could not remember what Sidle and Mr. Minnich were doing at the time, and neither she nor Sidle recalled the year of the visit—Sidle's failure to affirmatively confirm the time of her visit does not present an issue of material fact as to whether she was involved in the break-in.

Finally, the court has searched the record and been unable to locate sufficient additional evidence of Sidle's involvement. While Plaintiff's submissions repeatedly reference Sidle's antagonism towards Plaintiff and willingness to support Mr. Minnich (*see* Doc. 21-22, 43-45; Doc. 46 p. 9), the underlying proofs are particularly generalized and in no way implicate Sidle in the break-in. (*See e.g.*, Doc. 46-2 p. 18) ("I was working in a hostile work environment where females would go unresponded

---

[2] Plaintiff's office suite had previously been used as a nurse's office suite. (*See* Doc. 46-3 p. 19; Doc. 46-5 p. 6.)

to and it was not advantageous to ask for anything"); (Doc. 46-2 p. 19) ("Stacey chose time and time again to support a criminal. She admitted to being pressured to do things that he was asking her to do[.]"); (Doc. 46-2 p. 20) ("I think the evidence [of Sidle's involvement in the break-in] would have to be the hostile work environment I was working in and their behavior. The fact that she never checked on me or my children after a man broke into my home and tried to kill me and then continued to be employed there."); (Doc. 46-4 p. 15) ("I know I did tell Stacey at one time, [y]ou need to watch your back; I think Shawn [Minnich] will make you do stuff that you don't want to do. That was all I said to her, I think, at one point.")

## IV.   CONCLUSION

For the reasons outlined above, the motion for summary judgment filed by Defendants Stacey Sidle and Brian Geller will be granted. An appropriate order shall follow.

Dated: September 14, 2023

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge
